### NELSON J. BREWER *vs.* P. H. CASEY.

Berkshire.     September 10, 1907. — October 16, 1907.

Present : KNOWLTON, C. J., MORTON, BRALEY, SHELDON, & RUGG, JJ.

*Attorney at Law. Agency,* Scope of authority. *Release. Joint Tortfeasor.*

Whether, under a general employment, an attorney is authorized to compromise his client's claim without his permission, still is an open question in this Commonwealth.

At the trial of an action against the judge of a police court for false imprisonment of the plaintiff in committing him, in proceedings under R. L. c. 168, §§ 80, 81, to a house of correction instead of to a common jail and in doing so without first complying with the requirements of § 81, it appeared that the order of commitment was made out by the clerk of the court, and there was evidence that would have warranted the jury in finding that, after the commencement of this action, the plaintiff's attorney with his consent induced the clerk, by threatening to join him in the action as co-defendant with the judge, to pay to the attorney

$75 to release him from all claim by the plaintiff. *Held,* that the defendant was. released by the release of the clerk although the latter never became a party to the action.

If the plaintiff in an action of tort, by representing to one who is not a party to the action that he intends joining him as a defendant because he likewise was liable for the tort alleged to have been committed, induces such person to pay a sum of money in consideration of an agreement that he should not be so joined and releases him from further claim in the matter, such release of him is a bar to the further prosecution of the action against any defendant, even if it appears that in no case could such person have been held liable as a co-defendant if he had been joined.

TORT for assault and false imprisonment. Writ in the Superior Court for the county of Berkshire dated August 14, 1905.

There was a trial before *Crosby*, J., at which it appeared that the defendant as judge of the Police Court of Lee, without first complying with the requirements of R. L. c. 168, § 81, committed the plaintiff to imprisonment at hard labor in the house of correction for failure to obey an order made under § 80 of that chapter. The clerk of the court, one Wilson, made out the commitment papers. There was evidence that the plaintiff retained Messrs. Joyner and Whiting, of Great Barrington, attorneys at law, to seek damages for the alleged arrest and false imprisonment. They brought this action against the judge of the police court only, and later communicated with Wilson that they were considering joining him as a defendant. There was a considerable correspondence between Wilson and Mr. Joyner on the subject, and finally Wilson paid Mr. Joyner $100, understanding that thereby the entire suit was settled, but Mr. Joyner returned $25 because he did not intend to release the defendant, but did intend to release Wilson. Thereafter Messrs. Joyner and Whiting filed their disappearance as attorneys for the plaintiff, and another attorney continued the prosecution of this action.

There was evidence introduced on behalf of the plaintiff tending to show that he did not authorize the settlement made by Mr. Joyner with Wilson.

The plaintiff asked the presiding judge to rule that, if they should find that the plaintiff's attorneys with the plaintiff's authority and for a good consideration agreed with Wilson that they would not make him a co-defendant in this action, and Wilson paid the money as agreed, such agreement was no bar to

plaintiff's recovery; and that any settlement made by plaintiff's attorneys with Wilson after suit brought by the plaintiff against the defendant Casey was not a bar to this action.

The requests were refused and the plaintiff excepted.

The judge, without exception by the defendant, charged the jury in part as follows: " If you should find that here was a wrong which was committed by Judge Casey and by Wilson, the clerk, or if you should find that Judge Casey was the sole wrongdoer in this case, and you should find that Wilson was not blamable and not chargeable with any wrong so far as this plaintiff is concerned, yet if the plaintiff should make a claim against Wilson and should claim that he was liable as well as Casey, and, that claim being made, settlement should be made with Wilson, that would equally discharge the defendant Casey, as it would be a discharge of Wilson. . . . In order that the defendant may be relieved from liability it must appear that Mr. Joyner, acting as the plaintiff's attorney, did make a settlement , with Wilson, and that he made that settlement with the knowledge and with the consent of the plaintiff. . . . If you find that there was such a settlement and that it was a settlement of the claim which the plaintiff had against Wilson, growing out of this arrest, and that Wilson was paying this money to relieve himself from being joined as a co-defendant, that the purpose and the intent of that settlement was to release and relieve and excuse Wilson from further liability so that he would not be sued again so that no further claim should be made on him in this case, then that settlement, if made under the circumstances which I have recited, would be a bar in this action to the plaintiff's recovery."

The jury found for the defendant. Other facts are stated in the opinion.

The case was submitted on briefs.

*P. J. Moore*, for the plaintiff.

*B. Bossidy, J. F. Noxon & M. L. Eisner*, for the defendant.

BRALEY, J. Under R. L. c. 168, §§ 80, 81, the power conferred upon police, district and municipal courts to commit a debtor for contempt if he fails to comply with a valid order for the payment of the debt is analogous to that exercised by a court of equity, which may enforce its decrees by imprisonment of the

contemner in the common jail. R. L. c. 166, § 13. *Hurley* v. *Commonwealth*, 188 Mass. 443, 448. The only recital relating to the plaintiff's cause of action in the bill of exceptions is, that upon his failure to comply with an order of the police court made under the statute, he was adjudged guilty of contempt and "committed to prison for the term of fourteen days." But, the word "prison" being sufficiently broad to include all institutions for the detention of persons sentenced to imprisonment or detained to await their trial, no excess of jurisdiction appears, and obviously the plaintiff has not been wronged. *Sturtevant* v. *Commonwealth*, 158 Mass. 598, 600. Upon resort, however, to the instructions under which the case was submitted to the jury, to which no exceptions were taken, it is manifest that evidence was introduced from which it could have been found that, as justice of a court of limited jurisdiction, the defendant exceeded his authority in issuing an order directing the commitment of the plaintiff to the house of correction at hard labor, instead of to the common jail, and that, having been committed and detained in execution of the sentence, the plaintiff would be entitled to recover damages for a false imprisonment. *Piper* v. *Pearson*, 2 Gray, 120. *Clarke* v. *May*, 2 Gray, 410. But, while fully recognizing and stating this feature of the case, the presiding judge further charged that, previous to the entry of an order committing the debtor for contempt, certain preliminary proceedings were necessary under R. L. c. 168, § 81, which had not been taken, and that consequently the order entered was irregular, and the place and conditions of imprisonment therefore became immaterial. An instruction then followed predicated upon evidence presumably before the trial court, although not appearing in the exceptions, that, because of the defendant's failure to proceed in conformity with the statute, the police court was without jurisdiction to enforce the decree required by § 80, and the defendant could be held responsible in damages. To avoid liability upon either ground, the defendant relied upon a settlement made with one Wilson, who as clerk of the court issued the warrant of commitment. Whether this compromise is valid, and, if upheld, whether it is a bar to the present suit, are the questions to be decided.

It is contended first by the plaintiff that the attorneys whom

he originally retained, and who acted for him during the nego-
tiations, were not authorized to make the settlement. In this
case where it is again.raised by the defendant, as in the cases of
*New York, New Haven, & Hartford Railroad* v. *Martin,* 158 Mass.
313, and *Anglo-American Land, Mortgage & Agency Co.* v. *Dyer,*
181 Mass. 593, we do not find it necessary to determine the
question there left open, whether under a general retainer an
attorney is authorized without his client's permission to com-
promise his client's claim either before or after suit has been
brought. See also *Dalton* v. *West End Street Railway,* 159
Mass. 221. It was undisputed not only that the money had
been received and retained by the plaintiff's attorney who then
was in active management of the litigation, but Wilson was led
to understand, and understood, that as finally left the adjust-
ment at least released him from any further liability. If the
ample statements concerning the knowledge of the plaintiff, and
of previous authority from him to settle, found in the letters of
his counsel, were inconsistent with · their oral evidence given
at the trial, the true character of the transaction in all its essen-
tial details, as well as the credibility of the witnesses, remained
an issue of fact solely for the jury to determine. *O'Driscoll* v.
*Lynn & Boston Railroad,* 180 Mass. 187, 189. *Paquette* v. *Pru-
dential Ins. Co.* 193 Mass. 215. They were not unwarranted in
finding, as they must have done on this conflicting testimony, that
after the plaintiff had been informed that it would be advisable
by an amendment to join Wilson as a defendant in the present
suit if a settlement was not effected, the payment was made and
received with his knowledge and acquiescence. In either view,
the order of commitment of the plaintiff to prison having been
illegal and hence void, whether, if Wilson had been joined in
this action, he could have been held ultimately for misfeasance
in the performance of a ministerial duty, is immaterial and need
not be decided. See *Agry* v. *Young,* 11 Mass. 220; *Stetson* v.
*Kempton,* 13 Mass. 272, 282; *Libby* v. *Burnham,* 15 Mass. 144;
*Thames Manuf. Co.* v. *Lathrop,* 7 Conn. 550, 557. The plain-
tiff had only a single cause of action, for which he was entitled
to but one satisfaction in damages, although the wrong suffered
might have been a joint tort. *New York Bank Note Co.* v. *Kid-
der Press Manuf. Co.* 192 Mass. 391, 407, 408, and cases cited.

In the application of this principle, if in good faith a claim is made against one of the alleged wrongdoers, who is thereafter discharged by a compromise, all are thereby released, even if the party with whom the settlement is made might not have been legally liable. While the plaintiff may not have intended to pursue them jointly, but to institute separate suits, by claiming, as the jury must have found under the clear instructions upon this point that he did, that both participated in the wrongful act of which he complained, his settlement with Wilson also operated as a release of the defendant. *Brown* v. *Cambridge*, 3 Allen, 474, 476. *Leddy* v. *Barney*, 139 Mass. 394. *Stimpson* v. *Poole*, 141 Mass. 502. *Pickwick* v. *McCauliff*, 193 Mass. 70.

*Exceptions overruled.*