CHICAGO, TERRE HAUTE AND SOUTHEASTERN RAILWAY COMPANY v. MEURER.

[No. 23,267. Filed May 28, 1918.]

1. CARRIERS.—*Passenger Caretakers.*—A passenger caretaker of stock has the right to remain on the car until it arrives at the point where the stock is to be unloaded. p. 407.

2. PLEADING.—*Cure of Error.*—*Evidence.*—Where an inference could be drawn from the complaint, to which a demurrer was overruled, that the injured plaintiff was a passenger caretaker of stock on one of the defendant's cars, the failure of the complaint to show definitely the relation was cured by evidence, unobjected to, which showed that the defendant was such a passenger. p. 408.

3. COMPROMISE AND SETTLEMENT.—*Binding Effect.*—*Instructions.* In an action for injuries, it was reversible error to give an instruction to the effect that if the parties had *agreed* on a sum in settlement for damages to person and property, it was necessary to further find that the plaintiff "accepted it as such," in order to defeat the action, since the agreement, if made, was binding on the plaintiff. p. 409.

4. COMPROMISE AND SETTLEMENT.—*Acceptance of Tender.*—*Mental Reservations.*—Where there is a tender of a certain sum in settlement of an unliquidated claim for damages to person and property, the injured party cannot accept the tender with the mental reservation that it shall apply only to the damage to the property, where he knows, or ought to know, that it was tendered for the damages to both. p. 410.

From Greene Circuit Court; *Theodore E. Slinkard,* Judge.

Action by Charles E. Meurer against the Chicago,

Terre Haute and Southeastern Railway Company. From a judgment for plaintiff, the defendant appeals. (Transferred from the Appellate Court under §1405 Burns 1914, Acts 1901 p. 590.) *Reversed.*

*Webster V. Moffett, Beasley, Douthitt, Crawford & Beasley* and *W. F. Peter,* for appellant.

*Jesse F. Weisman, Cyrus E. Davis* and *Paul Y. Davis,* for appellee.

TOWNSEND, J.—Action by appellee against appellant for personal injury. There was a trial by jury and verdict for the appellee in the sum of $2,000. Errors relied on by appellant for reversal are: First, the overruling of its demurrer to appellee's amended complaint; secondly, the overruling of its motion for a new trial.

It is alleged in the complaint that appellant "agreed, received and undertook as a common carrier for hire to safely carry and transport from Indian Springs to the city of Linton, Indiana, a lot of household goods and furniture, five horses, two cows and appellee, in a certain car engaged for that purpose by appellee for the sum of $20 paid by appellee to appellant at that time." The complaint then alleges that appellant attached this car to one of its freight trains and hauled it to the city of Linton, and then says: "That upon the arrival at said city of Linton of said train, and before said car had reached the regular point and place that horses and cows were unloaded from cars on said line of railroad in said city, and at a time that said car was still loaded, as aforesaid, and plaintiff was still therein, defendant by and through its agents and servants and employes who were then and there in charge of and had control of said car, locomotive and trains of cars * * * switched said car upon a switch or sidetrack * * * at a place where the same could not be unloaded * * *; that while the car was standing on said side-

track and switch aforesaid, that said appellant by and through its employes and agents carelessly and negligently ran a train of cars loaded with stone over and along said track and switch at a great and unnecessary rate of speed, to wit, 20 miles an hour," thereby striking the car with great force and violence and injuring appellee. To this complaint appellant demurred for want of facts, which demurrer was overruled and exception was saved. The issue was formed by general denial and two paragraphs of special answer alleging compromise and settlement.

It is earnestly insisted by appellant that the court erred in overruling its demurrer to the amended complaint. The memorandum to the demurrer, which is relied upon by appellant, is to the effect that the complaint does not show that appellant owed appellee any duty at the time the injury occurred except not to wilfully injure him. Appellant says that it appears from the complaint that appellee was simply a passenger; that the car had arrived at Linton and it was therefore appellee's duty to alight and leave appellant's premises. If appellee was simply a passenger on this car to be transported from Indian Springs to Linton, this contention is correct. Appellee earnestly insists that the logical inference to be drawn from his pleading is that he was a passenger caretaker, and that as such his destination in the yards at Linton was at the cattle chute where cattle and horses could be unloaded and, the car not having been placed at that point, that he was rightfully on the car taking care of this stock.

It is true that this complaint does not make clear the relation, but it will be observed from what we have quoted that the allegation is that the car was

1. upon a sidetrack and not at the point where stock was to be unloaded. The evidence in the case tended to show that appellee was a passenger

caretaker of the stock, and, if he was such passenger caretaker, he had a right to be upon the car until it arrived at the point where the stock was to be unloaded. Appellee insists that all the evidence tends to show that he was a passenger caretaker, and that therefore this pleading is cured by the evidence. In this appellee is right. The inference may be drawn from the language of the pleading which we have above indicated that appellee was a passenger caretaker. Appellant was in no way surprised by the evidence. Appellant nowhere points out any objection or exception that is saved to the introduction of evidence which tended to show that appellee was a passenger caretaker.

It frequently happens that a pleading is such that a trial court should have sustained a demurrer to it, but if that court overrules the demurrer, the pleading may not be so defective as to make the court's ruling a cause for reversal by this court. In this case it would have been better had the trial court sustained the demurrer to this pleading and compelled appellee to make his complaint clear as to his theory that appellee was at the time of the accident a passenger caretaker of stock, because this very looseness in the pleading led to an inaccuracy in instructions Nos. 1 and 2 given by the court in defining the issue. That appellant's rights on this phase of the case were not prejudiced either by the overruling of the demurrer or the giving of the instructions Nos. 1 and 2, considering other instructions that were given, is quite clear.

Appellant next contends that the court erred in overruling its motion for a new trial and complains of instructions given and refused.

The court's instruction No. 9½ is as follows: "If you find, from a preponderance of the evidence in this case, that the plaintiff herein, either in person or by attorney or both, called upon the attorneys for the de-

fendant or any of them, and then and there laid before such attorney for the defendant the facts and circumstances involved in the shipment of household goods and other property from Indian Springs to Linton, Indiana, as alleged in his complaint, and if you further find that negotiations were entered into looking to the compromise and settlement of plaintiff's claim, and if you further find that a sum was *agreed* upon between the parties for injuries to person and property, and if you further find that defendant's attorney mailed a check to plaintiff's attorney for the sum of One Hundred Twenty-five Dollars ($125.00), and either by letter or by receipt or release enclosed therewith, tendered such sum to plaintiff in full settlement of all claims held by the plaintiff to that date, and plaintiff *accepted it as such,* and if you further find that plaintiff's attorney accepted said check and obtained the cash therefor, then the court instructs you that such transaction operated in law as the settlement of all then existing claims between plaintiff and defendant, including the claim herein sued upon, and your finding should be for the defendant."

Because this instruction was given, this cause must be reversed. The sharply controverted question of fact in the case was whether appellant and appellee had 3. compromised and settled a claim for personal injury. The evidence showed that appellee had received $125 from the appellant; but appellee claimed that this was for damage to his personal property. Appellant claimed that it was for damage to both property and person, and that it was tendered to appellee upon the express *condition* that it was in settlement of both; whereas appellee contended that no such condition attached thereto and that he was not so given to understand. Counsel for both the appellee and appellant took the witness stand and testified in this behalf. A receipt

was signed by appellee for this $125. The receipt itself is somewhat obscure as to whether it is a settlement of claim for damage to property or claim for damage to property and to person. Letters were introduced concerning the negotiations to throw light on the receipt. In the light of this evidence the court told the jury in this instruction that, if it found that the parties' minds had met and "agreed" on a settlement for damages to person and property, it should further find as a fact that appellee "accepted it as such," in order to defeat the action. In other words, this instruction told the jury that appellee could "agree" to a sum in settlement and then, to use the language of the street, "back out." If the jury found that the parties "agreed" to a sum for both person and property, then it made no difference, in the absence of fraud, whether appellee accepted it or rejected it. He was bound by it. Had he rejected it, appellant could have brought the money into court and compelled him to take it.

This instruction is a confusion of the law of "agreed" settlement and the law of settlement where there is a disagreement. If the parties met and absolutely

4.    disagreed as to the amount of damages and thereafter appellant tendered to appellee $125 upon the *condition* that it was for damages to his person and property, then he would be compelled to either accept it as it was tendered or reject it *in toto*. There can be no secret in the mind of either party. The one tendering must make his *condition* understandable. The one accepting can have no mental reservation that he will "accept it *as such*." In the case of a mere tender of settlement of an unliquidated claim with *condition made plain*, it would be error to tell the jury that the acceptor could "accept it *as such*." The words "as such" would give the jury the idea that the law allowed appellee, in this case, to determine whether he would accept $125 in

settlement for damages to his person and property, or accept it simply for damage to his property, even though he knew, or ought to have known, that it was tendered for both. This instruction is very erroneous and prejudicial when applied to the controverted facts in issue in this case.

Appellant's other points on instructions hark back to the complaint, i. e., whether appellee was simply a passenger or a passenger caretaker of stock. Appellant's rights were not prejudiced by appellee's theory under this pleading that he was a passenger caretaker. But, inasmuch as the judgment must be reversed on account of the instruction set out, it will clarify the issue to amend the complaint to state plainly appellee's theory.

Reversed, with instructions to sustain motion for a new trial and to sustain demurrer to amended complaint, with leave to amend.

NOTE.—Reported in 119 N. E. 714. Carriers: duty to caretakers accompanying shipments of stock, 31 L. R. A. (N. S.) 632, 22 L. R. A. 794. See under (1) 10 C. J. 630; (3, 4) 12 C. J. 319, 340.